**In the Matter of Thomas V. CASSIDY, Debtor–Appellant.**

No. 89–1121.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1989.

Decided Jan. 4, 1990.

Rehearing and Rehearing En Banc Denied Feb. 5, 1990.

Gary R. Allen, Gary D. Gray, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., Howard M. Soloman, Dept. of Justice, Tax Div., Washington, D.C., David R. Reed, Asst. U.S. Atty., Springfield, Ill., for defendant-appellee.

Timothy J. Cassidy, Cassidy & Mueller, Peoria, Ill., pro se.

Before FLAUM, MANION and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

The Commissioner of Internal Revenue charged that attorney Thomas V. Cassidy had filed fraudulent tax returns for the years 1974 and 1975. A notice of deficiency was sent in June 1980. Cassidy challenged the deficiencies in the United States Tax Court, but before the case came to trial a bankruptcy petition was filed against Cassidy in the Central District of Illinois. The Tax Court proceedings were automatically stayed. 11 U.S.C. § 362(a). Cassidy was discharged from all dischargeable debts on March 13, 1984. 11 U.S.C. § 727. The bankruptcy court issued an order on April 13 lifting the stay to allow the Tax Court proceeding to go forward. 11 U.S.C. § 362(d).

Cassidy was uncooperative in the Tax Court proceeding. He refused to respond to discovery requests, failed to meet deadlines, and generally delayed the proceedings. When the Commissioner sent a Request to Admit under Tax Court Rule 90 (equivalent of Fed.R.Civ.P. 36), Cassidy did not respond within thirty days as required by the Rule. The matters asserted in the Request were therefore deemed admitted. Among the facts admitted by Cassidy's si-

lence was the following: "Petitioner [Cassidy] fraudulently and with intent to evade taxes omitted from his income tax returns for the taxable years ended August 31, 1974 and August 31, 1975, a substantial portion of his gross income." *Cassidy v. Commissioner*, 51 T.C.M. (CCH) 784, 791 (1986). Although Cassidy did not respond to the Request to Admit, he did file a motion for dismissal or summary judgment based on his bankruptcy discharge.

The Tax Court denied Cassidy's motion, stating:

> We summarily denied petitioner's motion because petitioner's contention is on its face inconsistent with the explanatory memorandum attached to petitioner's Discharge of Debtor order and the April 13, 1984, order issued by the same bankruptcy judge lifting the automatic stay to permit this case to go forward in the Tax Court. Moreover, the redetermination of an income tax deficiency has "nothing to do with collection of the tax nor any similarity to an action for collection of a debt * * *." *Swanson v. Commissioner*, 65 T.C. 1180, 1184 (1976). Accordingly, if there is any question as to the collectability of any income tax deficiencies, which we doubt, that question is beyond the jurisdiction of this Court. *Graham v. Commissioner*, 75 T.C. 389, 399 (1980).

*Cassidy v. Commissioner*, 51 T.C.M. (CCH) at 786 n. 3.

At trial in the Tax Court, Cassidy tried to avoid the consequences of his failure to respond to the Request to Admit by claiming that he had not received the Request untU less than 30 days before the case was called for trial, and that the facts should therefore not be deemed admitted. The Tax Court held an evidentiary hearing on that claim, and found that Cassidy "fabricated [his] testimony in an effort to avoid the consequences of [his] continued deliberate disregard for his responsibilities in connection with this case." 51 T.C.M. at 789. The facts involved were deemed admitted under Rule 90(c).

On the strength of those facts considered admitted, the Tax Court held that there was a deficiency as stated by the Commissioner, and that the tax returns were fraudulent, occasioning "additions to tax" under 26 U.S.C. § 6653(b) as a penalty.

Cassidy appealed to this Court. He challenged the Tax Court's ruling concerning the Request to Admit, and also argued that the entire debt was discharged in bankruptcy. In *Cassidy v. Commissioner*, 814 F.2d 477 (7th Cir.1987) (*Cassidy I*), we affirmed the judgment of the Tax Court and ruled as follows: (1) the tax debt was not dischargeable in bankruptcy; (2) the fraud penalties connected with the taxes were not dischargeable; (3) the finding that Cassidy had over 30 days to answer the Request to Admit was not clearly erroneous; and (4) the facts deemed admitted supported the penalty for fraud.

Cassidy then returned to the bankruptcy court with a Complaint to Determine Dischargeability under Bankruptcy Rule 4007. In response to the Commissioner's argument that the Seventh Circuit had already dealt with the question, Cassidy contended that the Tax Court had no jurisdiction to consider dischargeability, and therefore the Seventh Circuit's comments were pure dicta with no preclusive effect. The bankruptcy judge granted the Commissioner's motion to dismiss on the *res judicata* effect of *Cassidy I*, stating that he would not second-guess the Court of Appeals.

On appeal to the district court, Cassidy advanced the same arguments. He was partially successful; instead of holding that Cassidy was barred by this court's view of dischargeability under *res judicata*, the district court held that Cassidy was barred under collateral estoppel by the Tax Court's factual finding of fraud, which dictated a finding of nondischargeability under 11 U.S.C. § 523(a)(1)(C).

In this Court, Cassidy raises the same contentions. He also argues that this Court erred in holding that the penalty portion of the debt was nondischargeable in *Cassidy I*.

*DISCUSSION*

██ The district court took what appears to be the most reasonable approach

to the resolution of this case: the court can rely on the factual finding of the Tax Court that Cassidy acted fraudulently when he filed his returns, which collaterally estops any contrary contentions. That finding supports the conclusion that the debt was not dischargeable under 11 U.S.C. § 523(a)(1)(C). This makes sense except for one matter not addressed by the parties or the district court: Tax Court Rule 90(f) states that

> [a]ny admission made by a party under this Rule is for the purpose of the pending action only and is not an admission by him for any other purpose, nor may it be used against him in any other proceeding.

According to the rule, the admissions from the Tax Court proceeding cannot be used in the bankruptcy proceeding. It follows that the judgment of the Tax Court on that factual issue, which is based solely on the admissions, cannot be a bar in this later proceeding.[1]

■ If this action is barred by the earlier litigation, it must be on the strength of this Court's opinion in *Cassidy I.* But for a ruling to have preclusive effect, it must be necessary to the decision. *See Rheinberger v. Security Life Ins. Co. of America,* 146 F.2d 680 (7th Cir.1944); *Koshatka v. Philadelphia Newspapers, Inc.,* 762 F.2d 329, 337 (3d Cir.1985); *Anthan v. Professional Air Traffic Controllers Org.,* 672 F.2d 706, 710 (8th Cir.1982). *United States v. Crawley,* 837 F.2d 291 (7th Cir. 1988), defines dicta as that portion of an opinion not entitled to the full weight usually given judicial decisions, including any portion not necessary to the outcome of the case. The portion of *Cassidy I* which concerned the dischargeability of the debt was, unfortunately, dicta.

■ The Court of Appeals exists to review judgments, and consideration of issues outside the scope of the judgment below must necessarily be dicta, as they cannot possibly be grounds either for approval or disapproval of the lower court's judgment. The Tax Court had no jurisdiction to consider whether Cassidy's tax debt was dischargeable in bankruptcy. *Gra-*

---

1. The case law on the question of whether a judgment based on an admission, as opposed to the admission itself, can be used in a later proceeding is relatively sparse. On consideration of the question, we hold that a judgment based solely on admissions made under Tax Court Rule 90 (or Fed.R.Civ.P. 36) cannot be used to estop relitigation of a factual question in a later proceeding.

None of the cases under Tax Court Rule 90(f) or Fed.R.Civ.P. 36(b) consider this issue directly. One could analogize deemed admissions to a default judgment on an issue of fact, but default judgments do not have collateral estoppel effect. *Matter of Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983); 1B Moore's Federal Practice ¶ 0.444[2]; *but see Matter of Wilson,* 72 B.R. 956 (Bkr.M.D.Fla.1987) (Default judgment in creditor's securities fraud suit collaterally estopped debtor from denying fraud in action to exempt debt from bankruptcy discharge).

One could consider a Rule 90 admission a special type of stipulation, but judgments based on stipulated facts have no collateral estoppel effect as to the matters stipulated, especially stipulations in tax cases. *United States v. International Building Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953), Moore's Federal Practice ¶ 0.444[4].

One might also analogize to a consent judgment on the factual issue. In *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987), a consent judgment in a state court suit admitting fraud estopped the debtor from contesting the factual underpinnings of a later bankruptcy action to exempt the debt from discharge. The consent decree from the state case specifically recited that "in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof." This court held that the "actually litigated" requirement for collateral estoppel would not bar use of the consent decree where the parties obviously contemplated such use. In the present case, it is arguable that Cassidy had to know that a decision on dischargeability would be made sooner or later. He also knew that the matters deemed admitted in the Tax Court were exactly what the bankruptcy court would have to find to hold the debt nondischargeable. But Tax Court Rule 90(f) by its terms precludes a determination that Cassidy should have expected the admission to be usable in any other forum. Absent such an expectation, the "actually litigated" requirement for application of the doctrine of collateral estoppel cannot be satisfied.

In view of the policy behind the rule authorizing admissions, which is to encourage admissions so as to narrow the scope of the issues for trial and simplify proof on the remaining issues, Advisory Committee Notes to 1970 Amendment of Fed.R.Civ.P. 36, we believe that it would be harmful to give preclusive effect to a judgment based solely on an admission.

*ham v. CIR*, 75 T.C. 389 (1980). Bankruptcy cannot therefore have been grounds for either affirmance or reversal of the Tax Court's order, and the *Cassidy I* court's discussion of it cannot have been necessary to its decision. It follows, then, that collateral estoppel and res judicata are technically inapplicable to this case.

■ Nevertheless, we hold that Cassidy is barred from relitigating the dischargeability of his tax debts. When he appeared before this Court in *Cassidy I*, he successfully argued that this court should address the dischargeability question. Now that he is unhappy with the final result, he has shifted his ground and argues that the *Cassidy I* court should have ignored his plea to consider dischargeability.

■ Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir.1982). It is to be applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice," *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953), to prevent litigants from "playing fast and loose with the courts." *Id.* "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). The doctrine of estoppel is intended to protect the courts rather than the litigants,[2] so it follows that a court, even an appellate court, may raise the estoppel on its own motion in an appropriate case. *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1168 n. 5 (4th Cir.1982).

"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any formulation of principle," *Allen*, 667 F.2d at 1166, but may be used where collateral estoppel and equitable estoppel fail to protect the interests the rule is intended to serve. *Id.* Although this court has never applied the doctrine, we have identified certain limitations on its application. In *Himel v. Continental Ill. Nat'l Bank*, 596 F.2d 205, 210–11 (7th Cir.1979), we held that the estoppel may be applied only where a clearly inconsistent position is taken. In that case we held that the plaintiff's position in a 1961 lawsuit asking that a trust instrument be modified to allow the trustee more flexibility in investing the trust corpus was not clearly inconsistent with its position in a 1972 lawsuit charging the trustee with mismanagement of the trust. Another limitation was identified in *Eagle Foundation v. Dole*, 813 F.2d 798, 810 (7th Cir.1987), where we required that the party to be estopped have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained.

In the present case, both of these conditions are satisfied. Cassidy unequivocally urged the *Cassidy I* court to consider the defense of discharge. His present position is that it was error for the court to give him what he then wanted. Even though Cassidy did not prevail on the appeal as a whole, he did prevail on the subsidiary question of what issues were to be decided by the court. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n. 5 (6th Cir. 1982) (party need not finally prevail to be estopped from changing a successful position on a preliminary matter). Cassidy's maneuverings were clearly intended to delay the inevitable day of reckoning, and in maneuvering he is trying to whipsaw this court. That is exactly the evil that the doctrine of judicial estoppel was meant to avoid.

■ It has been said that judicial estoppel applies only to positions on questions of fact. *See e.g. United States v. Siegel*, 472 F.Supp. 440, 442 n. 4 (N.D.Ill.1979); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L.Rev. 1244, 1262 (1986). We dis-

---

**2.** For this reason prejudice to the opponent from the change of position is not a necessary element of judicial estoppel, thus contrasting judicial estoppel from the more familiar equitable estoppel. *Konstantinidis v. Chen*, 626 F.2d 933 (D.C.Cir.1980).

agree. We note first that it may be advisable not to prescribe too many rules for the application of a doctrine designed to protect the integrity of the courts. *See Allen,* 667 F.2d at 1166 (doctrine probably not reducible to a formula). This is true for the same reasons that the courts are cautious in attempting to exactly define fraud—the fear that unscrupulous persons may use strictures on use of the doctrine to subvert the purposes of the rule. We also observe a trend away from strict limitation of the doctrine to positions on matters of fact. In *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 214 (1st Cir. 1987), the court noticed and continued a practice of holding parties to their representations that they would not pursue a legal claim. The court said, "On reflection, representations such as were made here, that a party will abandon a claim, present a *stronger* argument than do the classic cases for application of the doctrine." (emphasis in original). Similarly, in this case we think that the change of position on the legal question is every bit as harmful to the administration of justice as a change on an issue of fact. *See also United States v. Starrett City Associates,* 605 F.Supp. 262, 264 (E.D.N.Y.1985) (doctrine applies to assertions of law or fact).

We emphasize that it is not the court that is bound by Cassidy's actions, but only Cassidy himself. Estoppel does not eliminate a claim or defense, but only prohibits a particular party from asserting it. Estoppel is an equitable concept, and its application is therefore within the court's sound discretion. *See Motorola, Inc. v. CBS, Inc.,* 672 F.Supp. 1033 (N.D.Ill. 1986). It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake, *Hamilton v. Zimmerman,* 37 Tenn. (5 Sneed) 39, 48 (1857); *Johnson Serv. Co. v. TransAmerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973) ("the rule looks toward cold manipulation and not an unthinking or confused blunder"); or where there is only an appearance of inconsistency between the two positions but both may be reconciled. *Illinois Dept. of Trans. v. Coe,* 112 Ill.App.3d 506, 68

Ill.Dec. 58, 445 N.E.2d 506 (1983). In this case, we would work an injustice were we to fail to estop Cassidy. Cassidy has been delaying matters in the courts over his 1974 and 1975 tax liability since 1980. He has consistently acted to delay the proceedings and to obstruct the final resolution of his liability. He has found it expedient to change a position which he successfully maintained in this court, but this court is under no obligation, either legal or moral, to allow itself to be used in this manner. The parties in *Cassidy I* fully briefed and argued the issue of dischargeability, and the court gave it full consideration. It would be unjust to require the Commissioner to relitigate a question that was originally raised by Cassidy himself, or to allow Cassidy a second full-scale adjudication of an issue that the court has already resolved against him.

AFFIRMED.