**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 12, 2009

Charles R. Fulbruge III
Clerk

No. 06-60697

SEARCY M. FERGUSON, JR.; ELIZABETH L. FERGUSON,

Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent–Appellee.

Appeal from a Decision
of the United States Tax Court

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Searcy and Elizabeth Ferguson appeal from a decision of the Tax Court in a redetermination proceeding that denied two tax deductions, found the Fergusons liable for penalties for late filing of a return and substantially understating income, and concluded that it had no jurisdiction to consider whether certain tax debts had been discharged in bankruptcy. We affirm.

**I**

The Fergusons filed a joint tax return for 2000 in December of 2001, approximately two months beyond the extended deadline they had received upon earlier request. The Internal Revenue Service (IRS) determined that the

Fergusons owed additional tax and sent a notice of deficiency. The Fergusons filed a timely petition in the United States Tax Court for redetermination of their 2000 tax. Searcy Ferguson had petitioned for bankruptcy in 1999 and was discharged in 2004. The Tax Court thereafter held that the Commissioner's assessment of the 2000 deficiency was correct and that the Fergusons were liable for a deficiency of $23,473.00, a 10% late filing penalty of $2,347.30, and a 20% underpayment penalty of $4,694.60. The Fergusons contended that all 2000 tax liability has been discharged in the bankruptcy proceedings, but the Tax Court concluded that it did not have jurisdiction to resolve that question in a redetermination proceeding.[1]

The Fergusons have pursued an appeal to this court. Additional facts will be discussed in considering each of the Fergusons' contentions.

## II

The Fergusons assert that they were entitled to a deduction on their 2000 return for "loss" of farm property. The property consisted of three tracts of land near Vernon, Texas that Searcy Ferguson had purchased and later used as collateral for a loan from Herring National Bank. When Searcy Ferguson filed for bankruptcy in 1999, an automatic stay went into effect, but in 2001, the bankruptcy court lifted the stay, and Herring Bank foreclosed on the Vernon property.

The Fergusons contended that the bankruptcy estate trustee had abandoned the Vernon property in 2000 and that they were therefore entitled to deduct the value of the lien as a loss for that tax year. Searcy Ferguson had

---

[1] *Ferguson v. Comm'r*, 91 T.C.M. (CCH) 785, 2006 WL 469688, at *8 (2006).

initially filed for bankruptcy under Chapter 11, but in 2000 his petition was involuntarily converted to a Chapter 7 proceeding. This conversion, the Fergusons contend, amounted to an abandonment of the Vernon tracts to Herring Bank. The Tax Court found that the property was not abandoned by the trustee in 2000.

The parties stipulated in the Tax Court that the bankruptcy court did not lift the stay as to the Vernon property until 2001, and Herring Bank foreclosed that same year, not in 2000. The Commissioner correctly points out that the conversion of bankruptcy proceedings in 2000 did not cause the taxpayers to realize any loss or gain in that year. Additionally, the trustee did not abandon any property of the estate until 2003, after the Vernon property had been sold at a foreclosure sale. The Fergusons were not entitled to the deduction that they claimed.

### III

Searcy Ferguson was married to Elizabeth Robertson Smith prior to his marriage to Elizabeth Ferguson, and he and Smith owned real property in Southampton, New York. As part of their divorce agreement, Smith was awarded the Southampton property. The divorce agreement included an indemnity provision in which Searcy Ferguson and Smith agreed to indemnify each other for claims deriving from this property. Shortly before the divorce became final, Searcy Ferguson encumbered the Southampton property by using it as security for loans he obtained from Union Bank & Trust of Dallas. Following the divorce, Union Bank agreed with Smith that its liens on the Southampton property were improper (because they violated an injunction in the

divorce proceeding) and released the liens. Searcy Ferguson subsequently repaid the loans from Union Bank and unsuccessfully sued Smith for violation of the indemnification agreement. Searcy and Elizabeth Ferguson then claimed a deduction on their 2000 tax return for the Union Bank loan repayment amount as an ordinary business bad debt loss.

The Tax Court correctly determined that this debt was "nonbusiness debt" within the meaning of I.R.C. § 166(d)(2), and that a worthless nonbusiness bad debt must be treated as a short-term capital loss, not a deduction.[2]

## IV

In 2001, the Fergusons filed a request to extend their 2000 tax filing date for six months, to October 15, 2001. This request was granted. At some point prior to that deadline, the Fergusons were involved in other litigation and surrendered some or all of their property and tax records in response to a subpoena in that litigation. The Fergusons regained possession of their records during 2001. They filed their 2000 tax return on December 12, 2001, nearly two months past the extended filing deadline. The IRS calculated a late filing penalty. The Fergusons challenged that penalty before the Tax Court, claiming their delay was reasonably caused by the absence of their records in response to a subpoena. The Tax Court affirmed the penalty.

We review the Tax Court's findings regarding the existence of reasonable cause for the untimely filing of a tax return for clear error.[3] Section 6651(a) of the Internal Revenue Code provides for a late filing penalty (5% per month, up

---

[2] *See* I.R.C. § 166(a)(1), (d)(1).

[3] *Roberts v. Comm'r*, 860 F.2d 1235, 1242 (5th Cir. 1988).

to 25% total) unless the delay was due to reasonable cause.[4] Reasonable cause is defined by regulation: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause."[5] Under the Tax Court's precedent, unavailability (to the taxpayer) of "information or records does not necessarily establish reasonable cause for failure to file timely a tax return,"[6] because even without full information, "[a] taxpayer is required to file timely based upon the best information available and to file thereafter an amended return if necessary."[7]

Searcy Ferguson testified that he did not have his records for several months because of a subpoena, but there is no evidence of specific dates the records were unavailable or of whether all or only a part of the Fergusons' records were out of their control. Nor was there an explanation why the Fergusons did not retain or acquire copies of their records to complete their return on time. The Tax Court held that the facts in the record did not constitute reasonable cause because the Fergusons could have filed a timely return with what information they did have and could later have filed an amended return once their records were returned. The Tax Court did not commit clear error in upholding the late filing penalty.

---

[4] I.R.C. § 6651(a).

[5] 26 C.F.R. § 301.6651-1(c)(1).

[6] *Jacobson v. Comm'r*, 86 T.C.M. (CCH) 204, 2003 WL 21752458, at *2 (2003).

[7] *Id.*

**V**

Because the IRS believed the Fergusons had taken improper deductions on their 2000 tax return (regarding the Vernon and Southampton properties, and other deductions not at issue here), it found that the Fergusons had under-reported their income significantly and were liable for an accuracy-related penalty allowed by sections 6662(a) and (b)(2) of the Internal Revenue Code.[8] Before the Tax Court, the Fergusons challenged this penalty, arguing they had acted in good faith, with full disclosure, and had reasonable cause for their under-reporting. The Tax Court disagreed, finding no evidence that would exculpate the Fergusons from the penalty, and held that the Fergusons were liable.

On appeal, the Fergusons challenge the amount of the deficiency on which the 20% penalty was calculated. The Fergusons believe their penalty was calculated from a $91,763.00 base tax amount. This was the amount initially alleged by the IRS in the original notice of deficiency. However, in the Tax Court's final decision, the base tax liability was $23,473.00, and the underpayment penalty was $4,694.60, which is 20% of the base tax liability. The Tax Court did not err in this regard.

**VI**

Finally, we consider the Fergusons' argument that the Tax Court erred in concluding that it did not have jurisdiction in a redetermination proceeding pursuant to 26 U.S.C. §§ 6213 and 6214 to determine whether the taxpayers' 2000 tax liability was discharged in bankruptcy. All parties agree that in other

---

[8] I.R.C. § 6662(a), (b)(2).

proceedings that might be initiated pursuant to 26 U.S.C. § 6330, regarding levy on property to satisfy unpaid taxes, the Tax Court would have jurisdiction in an appeal[9] from an IRS Office of Appeals ruling to resolve whether tax liability had been discharged in bankruptcy.[10] The question before us is whether the Tax Court had the authority to consider the discharge issue in redetermining a deficiency under 26 U.S.C. §§ 6213 and 6214. The jurisdiction of the Tax Court is a question of law that we review de novo.[11]

The general grant of jurisdiction to the Tax Court is established by 26 U.S.C. § 7442, which states in its entirety:

> The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title III of the Revenue Act of 1926 (44 Stat. 10-87), or by laws enacted subsequent to February 26, 1926.

Since at least 1980, when the Tax Court's decision in *Graham v. Commissioner* issued, the Tax Court has held that it does not have jurisdiction in deficiency redetermination proceedings to resolve whether a tax deficiency was discharged in a prior bankruptcy proceeding.[12] In *Graham*, the bankruptcy

---

[9] 26 U.S.C. § 6330(d)(1) ("Judicial review of determination.–The person may, within 30 days of a determination under this section, appeal such determination to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).").

[10] 26 U.S.C. § 6330(c)(2) (providing that a taxpayer may raise before the IRS hearing officer "any relevant issue relating to the unpaid tax or the proposed levy" and "may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.").

[11] *Estate of Smith v. Comm'r*, 429 F.3d 533, 537 (5th Cir. 2005).

[12] 75 T.C. 389, 399 (1980).

proceeding was concluded and closed before the deficiency at issue was asserted. The Tax Court considered various then-governing bankruptcy statutes that obtained prior to the effective date of the 1978 Bankruptcy Code.[13] The Tax Court concluded that the bankruptcy court had jurisdiction to decide dischargeability[14] and that the Tax Court did not.[15] The court reasoned that its statutory jurisdiction was limited and that "its powers do not exceed those conferred by statute."[16] The Tax Court observed that "in exercising its jurisdiction to redetermine deficiencies," it "cannot 'allow or disallow a claim against a debtor's estate based on a deficiency in taxes or to discharge taxes as a bankruptcy court might.'"[17] The Tax Court concluded "that this Court lacks the requisite subject matter jurisdiction to decide whether the petitioner's deficiencies and additions to tax were discharged in the bankruptcy proceeding.

---

[13] *Id.* at 396-97.

[14] *Id.* at 397-98.

[15] *Id.* at 399.

[16] *Id.* (citing *Cont'l Equities, Inc. v. Comm'r*, 551 F.2d 74, 79-80 (5th Cir. 1977) (holding that the Tax Court did "not have the authority to order that a refund be given, or to review the Commissioner's denial of a refund claim . . . or to state that [related corporations] are entitled to such refunds" based on the Commissioner's section 482 allocation) and *Transp. Mfg. & Equip. Co. v. Comm'r*, 434 F.2d 373, 380 (8th Cir. 1970) (holding that "273(c) gives jurisdiction to the Tax Court to redetermine the amount of the deficiency and 'of all amounts assessed at the same time in connection therewith.' This provision contemplates a specified 'amount' actually assessed. The assessment is not open-ended and does not in any way reflect assessment for post-assessment interest that has yet to accrue. The interest actually assessed a the time of the deficiency relates only to simple interest due on the alleged deficiency at that time. It is not until the Tax Court has made a final judgment that the statutory scheme under both 273(i) and 294(b) contemplates the imposition of post-assessment interest.").

[17] *Id.* (quoting *Fotochrome, Inc. v. Comm'r*, 57 T.C. 842, 847 (1972)).

That is a matter which falls within the general jurisdiction of the bankruptcy court."[18]

The court in *Graham* also stated, "[t]he redetermination of an income tax deficiency has 'nothing to do with collection of the tax nor any similarity to an action for collection of a debt, nor does it involve any rights and remedies of the sort traditionally enforced in an action at law."[19] The quotation in this sentence was from the Tax Court's opinion in *Swanson v. Commissioner*,[20] in which the issue was whether the Seventh Amendment[21] required a jury trial in a redetermination proceeding. In *Swanson*, the court discussed other types of actions "similar to actions for damages or for collection of debts[,] which were actions requiring trial by jury at common law."[22] The court concluded, in contrast to those actions, that "[a]n action brought in the Tax Court for redetermination of a deficiency had no counterpart in actions at common law,"[23] and thus the petitioner had no right to a trial by jury in the Tax Court.[24] That conclusion has no bearing on whether the Tax Court has jurisdiction under 26

---

[18] *Id.*

[19] *Id.* (quoting *Swanson v. Comm'r*, 65 T.C. 1180, 1184 (1976).

[20] 65 T.C. 1180 (1976).

[21] U.S. CONST. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.").

[22] *Swanson*, 65 T.C. at 1183.

[23] *Id.*

[24] *Id.* at 1185.

U.S.C. §§ 6213 and 6214 to determine whether a tax debt has been discharged. The inclusion of the discussion in *Graham* of how common-law actions differ from redeterminations is confusing, at best.

The *Graham* decision has been criticized by at least one scholar,[25] and he has submitted a thoughtful amicus brief in the present case. This scholar and author notes, as we do, that the discussion of common-law debt actions in *Graham* has no relevance to whether § 6213 or § 6214 permits the Tax Court to decide, in redetermination proceedings, if a tax liability was discharged in bankruptcy. However, another argument advanced by Professor Germain is more to the point. He examines floor statements made by Representative Edwards regarding the Bankruptcy Reform Act of 1978.[26] The Supreme Court has considered similar statements "as persuasive evidence of congressional intent" in construing this Act "[b]ecause of the absence of a conference and the key roles played by Representative Edwards and his counterpart floor manager Senator DeConcini."[27] Specifically, Representative Edwards stated:

> If the Internal Revenue Service does not file a complaint to determine dischargeability and the automatic stay on a pending Tax Court proceeding is not lifted, the bankruptcy court could determine the merits of any tax claim against the estate. That decision will not bind the debtor personally because he would not have been personally before the bankruptcy court unless the debtor himself asks the bankruptcy court to rule on his personal liability. In any such situation where no party filed a dischargeability petition, the

---

[25] *See* Gregory Germain, *Discharging Their Duty: A Critical Assessment of the Tax Court's Refusal to Consider Bankruptcy Discharge Questions*, 23 VA. TAX REV. 531 (Winter 2004).

[26] *See* 124 CONG. REC. 32392, 32414 (1978).

[27] *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 64 n.5 (1990).

debtor would have access to the Tax Court to determine his personal liability for a nondischargeable tax debt. While the Tax Court in such a situation could take into account the ruling of the bankruptcy court on claims against the estate in deciding the debtor's personal liability, the bankruptcy court's ruling would not bind the Tax Court under principles of res judicata, because the debtor, in that situation, would not have been personally before the bankruptcy court.

If neither the debtor nor the Internal Revenue Service files a claim against the estate or a request to rule on the debtor's personal liability, any pending tax court proceeding would be stayed until the closing of the bankruptcy case, at which time the stay on the tax court would cease and the tax court case could continue for purposes of deciding the merits of the debtor's personal liability for nondischargeable taxes.[28]

This statement indicates that Representative Edwards intended for the Tax Court to determine, in some circumstances, whether a debtor had been discharged from personal liability for a tax debt. However, nothing in the Bankruptcy Reform Act of 1978 expressly gave this authority to the Tax Court, and more importantly, neither § 6213 nor § 6214 was amended to give the Tax Court authority to make such a determination when redetermining the amount of an alleged deficiency.

When Congress has thought it necessary to expand the authority of the Tax Court in redetermination proceedings under §§ 6213 and 6214, it has done so expressly. For example, the Tax Court may determine if an assessment of a tax debt is barred by limitations. Taxes generally must be assessed within three years after a return was filed,[29] and "[i]f the assessment or collection of any tax

---

[28] 124 CONG. REC. at 32414.

[29] 26 U.S.C. § 6501(a).

is barred by any statute of limitations, the decision of the Tax Court to that effect shall be considered as its decision that there is no deficiency in respect of such tax."[30] Congress has also expressly provided that if a deficiency is asserted against spouses, in some circumstances one or both may petition the Tax Court to allocate the deficiency between the two spouses.[31]

Prior to 2006, at least one circuit court had held that the Tax Court had no jurisdiction to consider equitable recoupment in redetermining a deficiency.[32] The Supreme Court explained in *United States v. Dalm* that equitable recoupment may be asserted "only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories,"[33] but expressly left open whether the taxpayer "could have raised a recoupment claim in the Tax Court."[34] (The taxpayer in *Dalm* had not raised a claim for a gift tax refund in her income tax redetermination proceedings but instead, after losing that litigation, brought a separate suit for refund of the gift tax. The Supreme Court held that the district court did not have jurisdiction over a separate action for equitable recoupment.[35]) Congress acted in 2006 to amend § 6214 to permit the Tax Court to entertain claims for equitable recoupment by adding the following sentence to subsection (b) regarding the Tax Court's jurisdiction in

---

[30] *Id.* § 7459(e).

[31] *Id.* § 6015.

[32] *See Estate of Mueller v. Comm'r*, 153 F.3d 302, 306 (6th Cir. 1998).

[33] 494 U.S. 596, 605 n.5 (1990).

[34] *Id.* at 611 n.8.

[35] *Id.* at 606.

redetermination proceedings: "Notwithstanding the preceding sentence, the Tax Court may apply the doctrine of equitable recoupment to the same extent that it is available in civil tax cases before the district courts of the United States and the United States Court of Federal Claims."[36]

Congress has not acted to grant express permission to the Tax Court to resolve, in a redetermination proceeding, whether a tax debt has been discharged in bankruptcy. All parties agree, however, that Congress gave the Tax Court authority to determine if a tax debt has been discharged when it amended § 6330 in 1998. Section 6330 now provides that in a collection due process hearing before an officer or employee of the IRS Office of Appeals, to which a taxpayer is entitled after notice of levy, the taxpayer "may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."[37] The Tax Court has jurisdiction over appeals from such rulings.[38]

At least one other circuit court has held that the Tax Court has no jurisdiction in a redetermination proceeding "to consider whether [a taxpayer's] tax debt was dischargeable in bankruptcy," although it abrogated its own prior ruling in so holding.[39] The Seventh Circuit had held in a prior appeal from a redetermination proceeding involving the same parties, *Cassidy v. Commissioner*

---

[36] 26 U.S.C. § 6214(b).

[37] *Id.* § 6330(c)(2)(B).

[38] *Id.* § 6330(d)(1).

[39] *In re Cassidy* (*Cassidy II*), 892 F.2d 637, 640 (7th Cir. 1990) (citing *Graham v. Comm'r*, 75 T.C. 389 (1980)).

(*Cassidy I*), that a particular tax debt was not dischargeable in bankruptcy.[40] The taxpayer then returned to bankruptcy court seeking a determination that this tax debt was discharged.[41] The bankruptcy court dismissed the action, concluding that the Seventh Circuit's decision in *Cassidy I* was *res judicata*.[42] The district court affirmed the bankruptcy court on other grounds.[43] In the ensuing appeal to the Seventh Circuit, that court examined whether it had had jurisdiction in *Cassidy I* to decide whether the debt was dischargeable.[44] It concluded that the Tax Court did not have jurisdiction to make that determination and therefore that the appellate court had not had jurisdiction either.[45]

The amicus brief filed in the present proceeding contends that to require a taxpayer to wait until a notice of levy has been issued and a collection due process hearing occurs to raise the issue of dischargeability is a waste of time and resources. The amicus may be correct. But that does not permit us to re-write §§ 6213 or 6214. The Tax Court did not err in declining to adjudicate whether the Fergusons' 2000 tax debt had been discharged in bankruptcy.

---

[40] 814 F.2d 477 (7th Cir. 1987).

[41] *Cassidy II*, 892 F.2d at 639.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 640-41.

[45] *Id.* at 641-42; *see also Meadows v. Comm'r*, 405 F.3d 949, 952 (11th Cir. 2005) (observing that "[t]he Tax Court has consistently held that it does not have jurisdiction under 26 U.S.C. § 6213 (redetermination of deficiencies) to determine whether or not a bankruptcy court 'had discharged a taxpayer from an unpaid tax liability in a bankruptcy proceeding instituted by such taxpayer.'" (quoting *Washington v. Comm'r*, 120 T.C. 114, 120 (2003))).

\*        \*        \*

For the reasons considered, we AFFIRM.