COX, Circuit Judge:
We consider in these consolidated appeals whether the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., (“IDEA”) requires a school board to continue providing services to children who have reached three years of age pursuant to Individualized Family Service Plans previously developed for those children under Part C of the IDEA until such time as Individualized Educational Plans are developed for the children under Part B of the IDEA. We conclude that it does not. Therefore, we affirm the district court’s judgments of dismissal.
I. BACKGROUND & PROCEDURAL HISTORY
D.P., E.P., and K.P. are autistic triplets who live with their parents (collectively, “Appellants”) in Broward County, Florida. Prior to their third birthday, the triplets received individualized care under the Early Intervention Program administered under Part C of the IDEA. The services provided the triplets under Part C of the IDEA were provided pursuant to Individualized Family Service Plans (“IFSPs”). Pursuant to IFSPs, disabled infants and toddlers may be provided with developmental services such as speech, occupational, and physical therapy services; medical services for diagnosis and evaluation purposes; and social work services. 20 *727 U.S.C. § 1432(4)(E). While IFSPs may include an educational component, they do not necessarily include such a component. Id.
On January 4, 2004, the triplets turned three and “aged out” of the Part C program. At the same time, they became eligible for services under Part B of the IDEA. Part B of the IDEA guarantees free appropriate public education (“FAPE”) to disabled children older than three. Services provided under Part B of the IDEA are generally provided pursuant to Individualized Educational Plans (“IEPs”) rather than IFSPs. IEPs differ from IFSPs in that they are focused on the educational needs of disabled children. 20 U.S.C. § 1414(d)(1)(A). However, at the time the triplets turned three, no IEPs had been developed for them.
On January 6, 2004, the Appellants initiated an administrative action by filing a due process complaint pursuant to the IDEA’S provisions. The due process complaint alleged that the School Board of Broward County (“the Board”) was contemplating modifying the services provided in the triplets’ last IFSPs and sought an injunction requiring the Board to continue the services in the IFSPs. Appellants purported to invoke the “stay put” provision in Part B of the IDEA, 20 U.S.C. § 1415(j). On January 9, 2004, an Administrative Law Judge (“ALJ”) held a telephone conference with the parties to the administrative action during which the parties agreed that no evidentiary hearings were necessary as the dispute presented only questions of law that could be resolved on papers submitted by the parties. After the matter had been fully briefed, the ALJ issued an order holding that the “stay put” provision did not require the Board to provide services pursuant to the triplets’ last IFSPs. The ALJ denied Appellants’ requests for injunctive relief, for reimbursement of the costs Appellants had incurred in continuing the services previously provided under the IFSPs, and for attorneys’ fees and costs. Appellants appealed the ALJ’s order to the federal district court in a case styled D.P. and L.P., on behalf of E.P., D.P., and K.P. v. School Board of Broward County (“D.P. I”). The complaint in D.P. I requested a declaration that the Board must continue the services provided to the triplets pursuant to the IFSPs, an injunction requiring the Board to do so, and reimbursement of the costs Appellants had incurred in continuing the services previously provided under the IFSPs.
On August 17, 2004, while D.P. I was still pending in the district court, Appellants filed another due process complaint alleging, among other things, that the Board had failed to have IEPs in place for the triplets on their third birthday and that, instead, the Board belatedly had developed temporary IEPs for the triplets. The temporary IEPs proposed placement of the triplets in the Baudhuin Preschool for pre-kindergarten children with autism. Appellants alleged that the temporary IEPs were invalid by reason of the parents’ refusal to consent to them. This second administrative action sought a declaration that the temporary IEPs were invalid and an injunction requiring the Board to provide the triplets with services pursuant to their last IFSPs until valid IEPs were in place. It also sought reimbursement from the Board for the costs that the parents had incurred in continuing the services previously provided under the IFSPs. Appellants requested that the ALJ first resolve (without an evidentiary hearing) the legal issues of whether the temporary IEPs were invalid and, if so, what remedy was due. After receiving briefing on those questions, the ALJ determined that the temporary IEPs were invalid because the parents had never con *728 sented to them. However, the ALJ also found that nothing in the IDEA or Florida law obligated the Board, as a result of the parents’ refusal to consent to the temporary IEPs, to provide the triplets with the Early Intervention Services they had been receiving previously under Part C of the IDEA. The ALJ denied Appellants’ requests for reimbursement. Finally, the ALJ ordered Appellants to file a statement indicating whether, in light of the resolution of the threshold questions, Appellants believed there to be any remaining unresolved issues in their action. Appellants filed no such statement. Instead, they filed a complaint in the district court challenging the ALJ’s decision.
The second district court case was styled L.M.P. on behalf of D.P., K.P., and E.P. v. School Board of Broward County (“D.P. II”). In D.P. II, Appellants claimed that the Board failed to provide the triplets with FAPE as required by the IDEA. Appellants asked the district court to declare the temporary IEPs invalid, order the Board to reimburse Appellants for the costs they had incurred in continuing the services formerly provided under the IFSPs, order the Board to continue the services provided under the IFSPs, and award Appellants attorneys’ fees and costs.
The Board moved to dismiss D.P. I and D.P. II, arguing in both cases that Appellants’ claims failed as a matter of law because neither the IDEA nor any other provision of law requires the Board to continue to provide services to the triplets pursuant to their IFSPs until valid IEPs are in place.
On March 8, 2005, the district court granted the Board’s motion to dismiss the complaint in D.P. / pursuant to Fed. R.Civ.P. 12(b)(6). On August 19, 2005, the district court granted the Board’s motion to dismiss in D.P. II, also for failure to state a claim upon which relief can be granted. Judgment was entered for the Board in both cases. Appellants appealed both judgments to this court, and we consolidated the cases on appeal.
II. CONTENTIONS OF THE PARTIES & ISSUES ON APPEAL
Appellants contend that the IDEA entitles the triplets to continued services pursuant to their IFSPs until valid IEPs are put in place for them. Appellants further contend that, because the parents did not consent to the temporary IEPs proposed by the Board, there are no valid IEPs for the triplets. They argue that the district court erred in refusing to issue an injunction requiring the Board to provide the services previously provided under the IFSPs.
The Board contends that the IDEA imposes no duty to continue to provide services under IFSPs to children who have reached age three. The Board also argues that, according to the plain language of the IDEA’S “stay put” provision, because the triplets have never enrolled in public school, the proper placement for them while an IEP is not yet in place is the public school program.
III. STANDARD OF REVIEW
We review de novo the district court’s grant of a motion to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir.2006) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir.2003)). Dismissal is appropriate “when, on the basis of a dispositive issue of law, no construction of the factual allegations will *729 support the cause of action.” Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir.1993).
IV. DISCUSSION
In the orders granting the motions to dismiss, the district court relied on the plain language of the pendency, or “stay put,” provision of the IDEA to hold that the statute does not require the Board to provide the services that had previously been provided under the IFSPs. We have said, “ ‘In construing a statute we must begin, and often should end as well, with the language of the statute itself.’ Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said.” United States v. Steele, 147 F.3d 1316, 1318 (11th Cir.1998) (quoting Merritt v. Dillard, 120 F.3d 1181, 1185 (11th Cir.1997) (other citations omitted)).
The “stay put” provision, which governs during the course of all administrative and judicial proceedings regarding a child’s proper placement under Part B of the IDEA, says:
Maintenance of current educational placement
[DJuring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.
20 U.S.C. § 14150).
Appellants contend that, through use of the disjunctive “or,” the statutory provision provides alternative placements for the triplets. According to Appellants, while their due process requests were pending, the triplets could have been placed in the public school program or they could have remained in their then-current educational placement. Appellants cite a Third Circuit case, Pardini v. Allegheny Intermediate Unit, 420 F.3d 181 (3d Cir.2005), to support their contention that the triplets “then-current educational placement” was the last IFSP from the Early Intervention Program.
We find Appellants’ argument unpersuasive in light of the unambiguous language of the statute. The disjunctive “or” does indeed provide alternatives; but, contrary to Appellants’ contention, the alternatives separated by the “or” are mutually exclusive. As the district court stated, if the educational agency (here, the Board) and parents do not agree to a placement for the child, which of the other two alternatives applies depends on one fact only— whether the child is applying for initial admission to a public school. If the child is not applying for initial admission, he shall remain in his existing educational placement. Or, if the child is applying for initial admission, he shall be placed in the public school program. We reach this conclusion based upon the placement of the disjunctive coordinating conjunction — between the two alternatives, but before the imperative, “if applying for initial admission to a public school [the student] shall ... be placed in the public school program.”
In this case, Appellants do not contest the fact that the triplets have never been admitted to a public school program. Therefore, the triplets are “applying for initial admission to a public school.” And, in the absence of an agreement otherwise between the Board and the triplets’ par *730 ents, the only placement available to the triplets is the public school program. The district court properly held that the fact that the parents withheld consent to placement in the program offered by the public school (pursuant to the temporary IEPs) does not create another option for the triplets. Without the parents’ consent, the triplets cannot be placed in the public school program; but, they are not entitled to an alternative placement pursuant to the statute. In other words, the IDEA does not entitle the triplets to continue receiving services pursuant to their IFSPs until such time as valid IEPs are put in place for them.[1]
We acknowledge that our decision is at odds with the Third Circuit’s holding in Pardini We think that case was incorrectly decided. As stated above, we base our conclusions on the plain language of the “stay put” provision. We do nóte, however, that our interpretation of the statute is consistent with that of the Department of Education. The implementing regulation in effect at the time Appellants filed their due process requests stated:
If the [due process] complaint involves an application for initial admission to public school, the child, with the consent of the parents, must be placed in the public school until the completion of all the proceedings.
34 C.F.R. § 300.514(b).[2]
Our interpretation is also consistent with other agency guidance on the proper pen-dency placement for children transitioning from Part C to Part B of the IDEA. That guidance, issued by the Office of Special Education Programs within the Office of Special Education and Rehabilitative Services of the United States Department of Education, is published in the Federal Register with the implementing regulations for the statute. It states:
Comment: A few commenters requested that the regulation be revised to make clear that the pendency provisions of § 300.514 apply to children transitioning from early intervention services under *731 Part C to preschool special education and related services under Part B.
Discussion: The pendency provision at § 300.514(a) does not apply when a child is transitioning from a program developed under Part C to provide appropriate early intervention services into a program developed under Part B to provide FAPE. Under § 300.514(b), if the complaint requesting due process involves the child’s initial admission to public school, the public agency responsible for providing FAPE to the child must place that child, with the consent of the parent, into a public preschool program if the public agency offers preschool services directly or through contract or other arrangement to nondisa-bled preschool-aged children until the completion of authorized review proceedings.
Changes: None.
64 Fed. Reg. 12,406, 12,558 (Mar. 12, 1999).
Because we rely on the plain language of the “stay put” provision, we do not engage in analysis to determine whether the agency’s interpretation of the statute is reasonable and therefore entitled to deference. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (stating that, where the statute is clear, that is the “end of the matter”). We simply note its consistency with our reading.
Appellants argue that they should have been granted an injunction pursuant to the “stay put” provision or Fed.R.Civ.P. 65. But, we do not find any error in the district court’s denial of the injunction. As stated above, the IDEA does not provide for continued provision of services to the triplets pursuant to their IFSPs. And, for that reason, Appellants did not (and cannot) carry their burden of demonstrating a substantial likelihood of success on the merits of their claim. See Siegel v. Le-Pore, 234 F.3d 1163, 1176 (11th Cir.2000) (en banc).[3]
The dissent claims that our holding is inconsistent with M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade County, Fla., 437 F.3d 1085 (11th Cir.2006). It is not. M.M. does not hold (as the dissent states) that the plaintiffs in that case were eligible for reimbursement because their child had received early intervention services. To the contrary, our opinion in that case affirmed dismissal of the plaintiffs’ claim for reimbursement because the complaint failed to state a claim that the child was denied FAPE. See id. at 1103. And, though M.M. recognizes that reimbursement may be available for services rendered after a child’s third birthday, that case does not hold that a school board can be enjoined to continue providing services previously rendered pursuant to an IFSP after a child’s third birthday or even that, in the case where FAPE has been denied, all services previously rendered pursuant to an IFSP are reimbursable. As stated above, whether the triplets were denied FAPE is not at issue in this case.
The dissent characterizes the result that our holding produces as “absurd,” using *732 that word at least four times. We do not agree and take comfort in the fact that the Department of Education interprets the “stay put” provision as we do.
V. CONCLUSION
For the foregoing reasons, we affirm the judgments for the Board.
AFFIRMED.

. The dissent maintains that our holding requires the triplets to enter public school, without any accommodation whatsoever and without any remedy. That conclusion is based upon neither the facts of this case nor our legal analysis. The "public school placement” that the triplets were offered by the school board is, in fact, enrollment at the Mailman Segal Institute’s Baudhuin Preschool, located on the main campus of Nova Southeastern University. The Baudhuin Preschool is a private school for pre-kindergar-ten-aged children with autism.
The triplets’ parents rejected this placement, as is their right under the IDEA. Having done so, they could have continued private services and challenged the school board’s plan in a due process hearing and, if necessary, a subsequent lawsuit in which they attempted to prove that the school board had denied the triplets FAPE. Had they been successful, the parents would have been able to receive reimbursement from the school board for the costs of the private services that replaced the FAPE their children were wrongly denied. See M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade County, Fla., 437 F.3d 1085, 1098-99 (11th Cir.2006).
However, while the triplets’ parents alleged in their due process requests that their children had been denied FAPE, they chose not to present evidence supporting their FAPE allegations. Therefore, no determination has ever been made as to whether the Board denied the triplets FAPE.

. The regulation has since been revised. The same language now appears in 34 C.F.R. § 300.518(b) (effective Oct. 13, 2006). Subsection (c) of the revised regulation reads, in part:
If the complaint involves an application for initial services under this part from a child who is transitioning from Part C of the Act to Part B and is no longer eligible for Part C services because the child has turned three, the public agency is not required to provide the Part C services that the child had been receiving.
34 C.F.R. § 300.518(c).

. The Board also moved to dismiss Appellants' claims for reimbursement of expenses incurred by continuing to provide the services previously provided under the IFSPs because the Board had failed to provide the triplets with FAPE on the ground that Appellants had failed to exhaust their administrative remedies as to those claims. The district court found that the reimbursement requests were premature because the ALJ had not determined whether the triplets had been denied FAPE. It is unclear whether Appellants seek review of the district court's dismissal without prejudice of these claims. We find no reversible error in the dismissals without prejudice.