# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30876

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2019

Lyle W. Cayce
Clerk

W & T OFFSHORE, INCORPORATED,

Plaintiff – Appellant – Cross-Appellee

v.

DAVID BERNHARDT, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR; GREGORY J. GOULD, DIRECTOR, OFFICE OF NATURAL RESOURCES REVENUE, U.S. DEPARTMENT OF THE INTERIOR,

Defendants – Appellees – Cross-Appellants

Appeals from the United States District Court
for the Western District of Louisiana

Before CLEMENT, ELROD, and DUNCAN, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This is an oil and gas royalty case concerning orders to pay issued by the Department of the Interior to W&T, a company that operated natural gas deposits leased from the federal government, in order to resolve volumetric gas delivery imbalances. The parties each appeal the district court's partial grant of each other's motions for summary judgment. We conclude that the Department of the Interior permissibly required resolution of delivery imbalances via cash payment, but that it improperly promulgated a substantive rule without subjecting it to notice and comment. We also hold that the Department of the Interior should have credited all W&T's deliveries

No. 18-30876

under the doctrine of equitable recoupment.  We therefore AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

I.

W&T operated offshore natural gas deposits leased from the federal government.  The Department of the Interior leased the deposits, pursuant to its authority under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331–1356b, in exchange for a monthly royalty payment.  *See* 43 U.S.C. § 1337(a)(1)(A); 30 U.S.C. § 1724(c)(2).  The OCSLA gives the Department of the Interior discretion to require royalties "in *amount or value* of the production saved, removed, or sold"—i.e., payment in kind or payment in cash.  43 U.S.C. § 1337(a)(1)(A) (emphasis added).

Several decades ago, the Department of the Interior began a pilot program that expanded the number of leases for which it required payment in kind, and W&T's leases were included in that program.  As both parties point out, "[n]atural gas markets are complex," and operators like W&T routinely struggled to "deliver the exact volume of gas actually owed."  Some months, W&T delivered too much gas; other months, too little.  As the pilot program progressed, the Department of the Interior sometimes issued delivery shortfall guidance in the form of "Dear Operator" letters.  These letters gave industry entities like W&T instructions and options for remedying underdelivered royalties: for instance, one typical letter advised operators to make up shortfalls with additional gas deliveries "within 120 days of the end of the production month" in question, or—failing that—to deliver the additional gas on a mutually-agreeable schedule or make a cash payment.

In October 2008, the Department of the Interior elected to begin requiring payment in cash from W&T.  It subsequently shuttered the payment-in-kind pilot program altogether.  In 2010, having determined that W&T's

No. 18-30876

underdeliveries had exceeded its overdeliveries during its participation in the pilot program, the Department of the Interior issued orders requiring W&T to make up the cumulative shortfall with a final cash payment.[1] The orders superseded all previous "Dear Operator" letters. The period over which W&T's delivery imbalances were calculated ran backwards from October 2008 to February 2003, past which point the Department of the Interior reasoned the statute of limitations barred any inquiry. *See* 30 U.S.C. § 1724(b)(1). The Department of the Interior also provided its methodology for calculating the amount due: multiplying the amount underdelivered in each month by the contract sales price it would have collected in each month had the proper amount of gas been delivered.

W&T appealed the orders to the Director of the Office of Natural Resources Revenue, who denied the appeal. *See W&T Offshore, Inc.*, 184 IBLA 272, 305 (2014). W&T then appealed that denial to the Interior Board of Land Appeals ("IBLA"), which affirmed. *See id.* at 305–06. W&T proceeded to file a request for judicial review of the IBLA decision in the district court. *See W&T Offshore, Inc. v. Jewell*, No. 14-cv-2449, 2018 WL 2437677, at *1 (W.D. La. Feb. 23, 2018); *see also* 43 U.S.C. § 1349(b); 5 U.S.C. § 704. There, the parties eventually filed cross-motions for summary judgment.

On the issues relevant to this appeal, W&T argued first that the "or" in the phrase "amount or value," 43 U.S.C. § 1337(a)(1)(A), precluded the

---

[1] The Department of the Interior also ordered W&T to pay interest on past-due royalties from the time the royalties originally became due (though the royalties had then been due in kind), despite having previously assured operators that interest would not begin to run until after the Department of the Interior began requiring payment in cash. The district court determined that this retroactive interest order was arbitrary and capricious, and remanded it to the Department of the Interior. The Department of the Interior does not challenge this ruling on appeal.

No. 18-30876

Department of the Interior from requiring make-up cash payments for past months in which it had originally required payment in kind.  Second, W&T argued that the Department of the Interior's decision to require retroactive payment-in-cash royalties—and its methodology for doing so—created a new substantive rule that should have been subject to notice and comment under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 552, 553.  Third, W&T argued that the Department of the Interior was obligated to comply with the valuation regulations set out in 30 C.F.R. part 1206, which generally value gas at the price the lessee receives, rather than at the Department of the Interior's contract sales price.  Fourth, W&T argued that the Department of the Interior should have credited its overdeliveries prior to February 2003, despite the statute of limitations in 30 U.S.C. § 1724.

The district court partially granted and partially denied the parties' cross-motions for summary judgment.[2]  On the statutory interpretation issue, applying the framework set out in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the district court determined that the statutory text was ambiguous and deferred to the Department of the Interior's interpretation: that nothing in the statute bars the Department of the Interior from switching its election from payment in kind to payment in cash.  As to the APA, the district court concluded that the Department of the Interior's orders were "grounded in and logically justified by the specific statutory text," making them mere interpretive rules for which notice and comment is not required.  The district court also rejected W&T's claim that the Department of the Interior used the wrong valuation methodology, reasoning

---

[2] The district court's reasoning is set out in the report and recommendation of the magistrate judge, which the district court adopted.

4

that the regulations W&T pointed to applied only to royalties "owed in value in the first place—not [to] the valuation of underdeliveries of royalties in kind." Finally, the district court agreed with W&T that the Department of the Interior should have credited W&T's previous overdeliveries because "[a]s a purely defensive procedure, [equitable recoupment] is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations." *Distrib. Servs., Ltd. v. Eddie Parker Interests, Inc.*, 897 F.2d 811, 812 (5th Cir. 1990).

As a result, the district court partially granted and partially denied the parties' cross-motions for summary judgment, resulting in a final judgment vacating the orders to pay and remanding them to the Department of the Interior for re-issuance consistent with the court's rulings. The parties appealed. W&T challenges the district court's *Chevron*, APA, and valuation rulings, and the Department of the Interior challenges its equitable recoupment ruling. The arguments will be considered in turn.

II.

The court "review[s] de novo a grant of summary judgment, applying the same legal standards that the district court applied." *Kerr-McGee Oil & Gas Corp. v. U.S. Dep't of Interior*, 554 F.3d 1082, 1084 (5th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When cross-motions for summary judgment have been ruled upon, "we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)).

No. 18-30876

III.

We begin by considering whether the Department of the Interior exceeded its statutory authority by changing its election from payment in kind to payment in cash for overdue royalties. W&T argues that the statutory text permitting the Department of the Interior to require monthly royalties "in amount or value of the production saved, removed, or sold," 43 U.S.C. § 1337(a)(1)(A), evinces a "disjunctive" choice in that once the Department of the Interior requires payment in kind for a given month, it cannot later require payment in cash to resolve the outstanding balance for that month. The Department of the Interior does not dispute that the choice is "disjunctive" in some sense—i.e., that it cannot require operators to pay the amount due twice over, once in kind and once in cash. Instead, the Department of the Interior argues that the two methods of payment are not mutually exclusive, and therefore that it can change its election between payment types for a given monthly obligation until the full value has been paid. The district court concluded that the statute was ambiguous and deferred to the Department of the Interior's interpretation. We agree.

*Chevron* supplies the familiar two-step framework for judicial review of an agency's interpretation of its statutory authority:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter . . . . If, however . . . the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43. At the first step, courts "apply[] the traditional tools of statutory interpretation" to gauge statutory clarity, "bear[ing] in mind the Supreme Court's admonition" to "interpret the statute as a symmetrical and

6

No. 18-30876

coherent regulatory scheme." *BNSF Ry. Co. v. United States*, 775 F.3d 743, 751 (5th Cir. 2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). At the second step, if the agency action carries the force of law,[3] courts defer to the agency's interpretation of the governing statute as long as that interpretation is a "permissible construction of the statute." *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 392 n.10 (5th Cir. 2014) (quoting *Chevron*, 467 U.S. at 843). An interpretation is "permissible" when it is a "reasonable" one. *Id.* (quoting *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009)).

Here, W&T's contention that the statutory phrase "amount or value" unambiguously prohibits the Department of the Interior from changing its election from payment in kind to payment in cash for overdue royalties is unpersuasive. Nothing in the statutory text or context purports to limit the Department of the Interior's ability to elect—or re-elect—its preferred method of royalty payment. To the extent the statutory context provides any insight into the Department of the Interior's royalty collection power, it evinces a grant of discretion to the Department of the Interior to determine how best to "achieve effective collections of royalty and other payments." 30 U.S.C. § 1712(a); *see id.* (stating that "a lessee who is required to make any royalty or other payment under a lease or under the mineral leasing laws, shall make such payments in the time and manner as may be specified by the Secretary"); 30 U.S.C. § 1711(c)(1) ("The Secretary shall audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted.").[4]

---

[3] No party argues that the orders to pay did not carry the force of law.

[4] W&T points out that these provisions are not an independent grant of regulatory power, such that the authority to "take appropriate actions" does not permit the Department

No. 18-30876

W&T advances several arguments in support of its reading, but each falls short. W&T begins by citing several cases for the proposition that "[i]t is well-established that the disjunctive term 'or' unambiguously signifies mutually exclusive options that cannot be combined." But only one of these is a case in which a simple "or" was clearly construed as creating mutually exclusive alternatives—and that case is distinguishable. In *D.P. ex rel. E.P. v. School Board*, 483 F.3d 725 (11th Cir. 2007), the Eleventh Circuit construed the following statutory text:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). The Eleventh Circuit rejected appellants' contention that this language allowed a free choice between the two alternative placements. Instead, because of "the placement of the disjunctive coordinating conjunction—between the two alternatives, but before the imperative," the Eleventh Circuit held that the statute created mutually exclusive alternatives: the fact of whether the child was applying for an initial admission unavoidably determined the child's placement. *D.P.*, 483 F.3d at 729. Here, unlike in *D.P.*, the relevant statutory language does not place the "or" before an imperative, making *D.P.*'s statutory interpretation unhelpful.

---

of the Interior to exceed specific limitations on its authority. *See Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884, 892 (5th Cir. 2004). As discussed *infra*, however, W&T does not demonstrate how the Department of the Interior's decision to change its royalty type election exceeds its statutory authority in any way.

No. 18-30876

Next, W&T argues that—because the statutory definition of "obligation" includes "any duty of the Secretary . . . to take oil or gas royalty in kind," 30 U.S.C. § 1702(25)—the Department of the Interior is forever bound to accept payment in kind for a given month if it once elects to require payment in kind for that month. This definitional provision cannot bear the weight W&T places on it, as it says nothing about what the scope of any such "duty" might be. Instead, W&T's unexplained assumption that any duty to accept in-kind payments is permanent for a given monthly obligation is merely a repackaging of its unexplained assumption that the Department of the Interior's election between royalties in kind and royalties in cash is also permanent.

W&T also argues that the incorporation of § 1337(a)(1)(A)'s "amount or value" language into its lease provisions created an "alternative contract" and that the Department of the Interior's original election of in-kind payment forever fixed the parties' obligations under that contract. *See generally* 11 Timothy Murray, *Corbin on Contracts* § 59.4 (rev. ed. 2019) (discussing alternative contracts). However, W&T does not explain how the "incorporat[ion of the] OCSLA provisions as promises," *Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 614 (2000), causes those provisions to take on a meaning different from the one they already had. Therefore, W&T's argument again assumes its conclusion—that the statutory phrase "amount or value" permanently locks the Department of the Interior in to its election for a given month.

Finally, in its reply brief, W&T argues that Congress's use of the words "or both" after setting out alternatives elsewhere in the OCSLA—but not in § 1337(a)(1)(A)—evinces an intent that the Department of the Interior not be allowed to elect "both" payment in kind and payment in cash here. *See* 43 U.S.C. §§ 1337(a)(1)(B), 1350(c)–(d), 1352(b)(2), 1353(a)(1); *see also Hamdan v.*

*Rumsfeld*, 548 U.S. 557, 578 (2006) ("[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.").

This contention misses the mark because the other "or both" provisions in the OCSLA are instances in which Congress appears to countenance the application of multiple alternatives *at the same time.* For instance, § 1337(a)(1)(B) discusses royalties "in amount or value of the production saved, removed, or sold, with either a fixed work commitment based on dollar amount for exploration or a fixed cash bonus as determined by the Secretary, *or both.*" 43 U.S.C. § 1337(a)(1)(B) (emphasis added). Presumably, leases under this provision could permissibly and simultaneously require a "fixed work commitment based on dollar amount for exploration" *and* "a fixed cash bonus." *Id.* Thus, Congress's decision not to use the words "or both" in § 1337(a)(1)(A) might reasonably signify only that Congress intended to limit the Department of the Interior to requiring one type of payment at a time. As the district court concluded:

> The use of "or" in the above-cited provisions of the OCSLA may be enough to show, as W&T contends, that [the Department of the Interior] cannot demand payments of royalties in kind and in value at once; however, it is not sufficiently unambiguous to evince Congress's intent, within the royalty scheme set out under the OCSLA, that [the Department of the Interior] be bound by its election such that it is prevented from demanding that an imbalance of a payment due in kind be resolved instead in cash.

Moreover, W&T's argument proves too much. If the Department of the Interior's choice between requiring payment "in amount or value" truly "signifie[d] mutually exclusive options that may not be combined," the Department of the Interior would appear to be permanently bound by its initial

royalty election over the lifetime of the lease.  But even W&T admits that the Department of the Interior is not "bound forever by electing to take royalties on a given lease either in cash or in kind."  Instead, W&T's reading would allow the Department of the Interior to change its election for future months—just not for past months for which payment is overdue.  W&T does not cogently explain how such a result is the unambiguous intent of Congress as expressed by its direction that the Department of the Interior collect royalties "in amount or value."  43 U.S.C. § 1337(a)(1)(A).

For its part, the Department of the Interior simply argues that "[n]othing in OCSLA or the implementing regulations (or any other statute) provides that once [it] elects to take royalties in kind, it is barred from later taking royalties in value to satisfy an outstanding royalty deficiency on the lease."  In essence: § 1337(a)(1)(A) allows the Department of the Interior to choose the method of payment for outstanding royalties, and there is no textual support for a limitation on its ability to so choose.  Thus, argues the Department of the Interior, the OCSLA unambiguously permits it to demand a cash payment from W&T to satisfy past-due royalties originally due in kind.

The Department of the Interior's straightforward argument has some force, but we need not dwell here on the distinction between whether the statute unambiguously supports the Department of the Interior's interpretation or whether it does not definitively speak to the issue and is thus ambiguous.  Even assuming that Congress left a statutory gap here, the lack of any clear indication that the Department of the Interior's election authority was to be cabined to a one-time-only choice for a given monthly obligation makes the Department of the Interior's interpretation a permissible one to which we accord *Chevron* deference.  This is especially so given Congress's expressed intent to "increase receipts and achieve effective collections of

11

royalt[ies]" by commanding lessees to "make such payments in the time and manner as may be specified by the Secretary." 30 U.S.C. § 1712(a).

Because the Department of the Interior's interpretation of § 1337(a)(1)(A) is permissible, the district court properly granted summary judgment to the Department of the Interior on this ground.

IV.

We next consider whether the Department of the Interior's requirement of a cash payment to resolve delivery shortfalls is a new substantive rule that should have been subject to notice and comment under the APA. W&T argues that the requirement is a substantive rule, while the Department of the Interior maintains that it is not a rule at all, but rather an adjudicative order. The district court concluded that the requirement was an interpretive rule not subject to notice and comment. We disagree.

The APA obligates agencies to subject their substantive rules to notice and comment. *See* 5 U.S.C. § 553. A "rule" is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Substantive rules "are those which create law, usually implementary to an existing law." *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 619 (5th Cir. 1994) (quoting *Brown Express, Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979)), *modified on other grounds*, No. 93-1377, 1994 WL 484506 (5th Cir. Sept. 7, 1994). They typically "grant rights, impose obligations, or produce other significant effects on private interests." *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908 (5th Cir. 1983) (quoting *Batterton v. Marshall*, 715 F.2d 694, 701–02 (D.C. Cir. 1980)). Substantive rules not subjected to notice and comment may not be enforced against a party. *See Phillips Petroleum*, 22 F.3d at 621 (citing 5 U.S.C. § 552(a)(1)).

No. 18-30876

Adjudicative orders, on the other hand, are not rules at all and therefore need not go through notice and comment. *See generally* 5 U.S.C. § 551(6) (defining "order" as "a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making"); 5 U.S.C. § 551(7) (defining "adjudication" as the "agency process for the formulation of an order").[5]

While the Fifth Circuit may accord "some deference" to "the agency's characterization of its own rule," this deference is minimal—courts "focus[] primarily" on the actual characteristics of the agency action. *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995); *see also id.* at 596 ("The label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather, it is what the agency does in fact." (alteration omitted) (quoting *Brown Express*, 607 F.2d at 700)).

Here, the Department of the Interior's characterization of its orders to pay as the result of an adjudicative order is unpersuasive. *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616 (5th Cir. 1994) and *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622 (5th Cir. 2001) are instructive.

In *Phillips Petroleum*, Phillips owed natural gas royalties to the Department of the Interior. 22 F.3d at 618. Until 1988, the Department of the Interior "considered several factors in determining the value of federal offshore

---

[5] Interpretive rules, meanwhile, need not be subject to notice and comment. *Phillips Petroleum*, 22 F.3d at 619. An interpretive rule is generally a "statement[] as to what the administrative officer thinks the statute or regulation means." *Id.* (quoting *Brown Express*, 607 F.2d at 700); *see also Avoyelles*, 715 F.2d at 908–09 (noting that interpretive rules "are not determinative of issues or rights addressed," but rather "express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures" (quoting *Batterton*, 648 F.2d at 702)). The Department of the Interior does not argue on appeal that the orders to pay were interpretive rules.

production for royalty purposes." *Id.* But in 1989, the Department of the Interior directed Phillips to recalculate and pay previously-due royalties pursuant to the methodology set out in an "unpublished internal agency paper referred to as the 'Procedure Paper'" which created "new criteria for valuing natural gas liquid products." *Id.* On appeal to this court, the Department of the Interior argued that the Procedure Paper was not a substantive rule because it merely clarified existing regulations. We disagreed. Noting that the new valuation methodology "effect[ed] a change in the method used by [the Department of the Interior] in valuing" natural gas products, we concluded that it constituted a new substantive rule. *Id.* at 619–20.

*Shell Offshore* concerned the Department of the Interior's previous practice of accepting crude oil tariffs merely "filed" with the Federal Energy Regulatory Commission ("FERC") as satisfying a regulatory exception applicable to tariffs "approved" by FERC. 238 F.3d at 624–25. In 1994, when Shell filed tariffs with FERC and asked the Department of the Interior to verify that it had satisfied the regulatory exception, the Department of the Interior changed its position. It issued an order denying the request because Shell had not "receive[d] from FERC a determination affirmatively stating that FERC possessed jurisdiction" over the tariffs. *Id.* at 625–26. On appeal to this court, the Department of the Interior argued that its denial of Shell's tariff request evinced nothing more than a workaday adjudicatory order, not a substantive rule. We disagreed. We first noted that the Department of the Interior's requirement of an affirmative jurisdictional statement from FERC was "a departure from [the Department of the] Interior's previous practice of treating as approved all filed FERC tariffs." *Id.* at 628. Next, we noted that the adjudication resulting in the denial could not be described as the application of a pre-existing "general regulation to the specific facts of Shell's case." *Id.*

14

Rather, the Department of the Interior had "established a new policy and then applied that new policy to several [industry entities], including Shell." *Id.* Because "the adjudication . . . was wholly predicated upon a new requirement that [was], in effect, a new substantive rule," we concluded that the Department of the Interior should have subjected its new policy to notice and comment. *Id.* at 627–28.[6]

At oral argument, counsel for the Department of the Interior admitted that "this court's caselaw [on this issue] is *Phillips* [*Petroleum*] and *Shell* [*Offshore*], neither of which are particularly helpful for us." Oral Argument at 25:41. We agree with this assessment. Like in *Phillips Petroleum*, the Department of the Interior engaged in an internal effort to develop a new royalty valuation methodology—expressly "supersed[ing]" previous practices—which it then ordered industry entities to adhere to and to apply to royalties due in previous years.[7] Like in *Shell Offshore*, the Department of the Interior did not apply a pre-existing regulation to the specific facts of an industry entity's case. Rather, it followed up the development of a new policy with adjudications in which the new policy "controlled the adjudicative process" and was applied across the board to a number of industry entities. *Shell Offshore*, 238 F.3d at 628. The Department of the Interior may not cloak

---

[6] The *Shell Offshore* court elsewhere relied on a doctrine stemming from *Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579 (D.C. Cir. 1997), which was later rejected by the Supreme Court. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199 (2015). None of this abrogates the analysis relied on here.

[7] As early as 2009, the Department of the Interior reported to the Government Accountability Office that it was "drafting regulations that address among other things the operator's obligation . . . to resolve or mitigate production imbalances." This would match the Department of the Interior's approach to resolving overdue royalties due in cash, which the Department of the Interior addressed through formal rulemaking. *See, e.g.*, 30 C.F.R. § 1206.159(e)(1). However, the Department of the Interior eventually jettisoned its plan to establish regulations governing overdue royalties due in kind in lieu of applying its new valuation methodology to industry entities through nearly-identical adjudications.

its development—and industry-wide application—of a new valuation methodology in the guise of simple adjudicative orders.

The Department of the Interior's arguments to the contrary are unavailing.  First, the Department of the Interior attempts to distinguish *Phillips Petroleum* because there it had "admitted" that the policy at issue "was a new rule." *Id.* (internal quotation marks omitted).  But that fact does nothing to vitiate *Phillips Petroleum*'s analysis of what makes up a substantive rule—analysis that is directly applicable here.  Next, the Department of the Interior argues that it was merely carrying out its "statutory duty to resolve the existing imbalances," and merely applied the relevant statutes to W&T.  *Shell Offshore* already aptly explains why the Department of the Interior's creation and uniform application of a new methodology is not an adjudicatory application of an existing rule to the facts of a specific case, and *Phillips Petroleum* explains why the new methodology can only be a substantive rule.

Finally, the Department of the Interior points to the APA's definition of a "rule" as an agency action that has "future effect," 5 U.S.C. § 551(4), and argues that here it would be free in future adjudications to apply a different methodology.  This hypothetical rings hollow in light of the Department of the Interior's actual actions in this case: its purposeful development of a comprehensive new policy to address an industry-wide problem and its application of that new policy across the board in all subsequent adjudications of the issue.  Indeed, the Department of the Interior's approach would permit an agency to create new policies and uniformly apply them to every industry entity going forward without ever undertaking notice and comment so long as it declined to say that it would necessarily stick to the policy forever.  Our approach to the substantive-rule analysis, grounded in *Phillips Petroleum* and

*Shell Offshore*, is not just an empty formalism that would permit that result.[8] At any rate, the language in the orders to pay—stating, for instance, that the Department of the Interior "cashes out the volume imbalances using the contracted sales price, less transportation, fuel, and/or quality bank costs each month there is an imbalance"—flatly communicates what the Department of the Interior's new payment valuation approach *is*, without any temporal limitation.

Because the Department of the Interior's orders to pay evince the creation of a new substantive rule, the district court improperly granted the Department of the Interior summary judgment on this issue.[9]

## V.

As a final matter, we address the issue of whether—whatever valuation methodology the Department of the Interior employs—the agency must credit all of W&T's prior overdeliveries in calculating the cumulative delivery shortfall. The Department of the Interior appeals the district court's ruling that it must do so, arguing that the statute of limitations set out in 30 U.S.C. § 1724(b)(1) prohibits it from crediting overdeliveries prior to the limitations period. W&T argues that the doctrine of equitable recoupment applies here to overcome the statute of limitations. We agree that equitable recoupment applies and therefore affirm.

We "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or

---

[8] It is unclear how the Department of the Interior's new methodology in this case has less "future effect" than the procedure paper in *Phillips Petroleum*, which the Department of the Interior had represented was a mere "policy guideline."

[9] This conclusion obviates the need to address W&T's appeal of the district court's determination that Interior did not contradict its own valuation regulations in calculating the amount due.

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The statute of limitations at issue states the following:

> A judicial proceeding or demand which arises from, or relates to an obligation, shall be commenced within seven years from the date on which the obligation becomes due and if not so commenced shall be barred. If commencement of a judicial proceeding or demand for an obligation is barred by this section, the Secretary, a delegated State, or a lessee or its designee . . . shall not take any other or further action regarding that obligation, including . . . completion of an audit with respect to that obligation . . . [and] shall not pursue any other equitable or legal remedy, whether under statute or common law, with respect to an action on or an enforcement of said obligation.

30 U.S.C. § 1724(b)(1). The common-law doctrine of equitable recoupment, meanwhile, provides "a defense that goes to the foundation of [a] plaintiff's claim by deducting from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction." *Eddie Parker Interests*, 897 F.2d at 812. "As a purely defensive procedure, it is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations." *Id.*

As the magistrate judge's report and recommendation succinctly and aptly explains, equitable recoupment is "never barred by the statute of limitations so long as the main action itself is timely." *Bull v. United States*, 295 U.S. 247, 262 (1935); *see also Eddie Parker Interests*, 897 F.2d at 812. Because W&T asserted equitable recoupment as a defense to the Department of the Interior's orders to pay, the statute of limitations does not apply.

The Department of the Interior offers three reasons to conclude otherwise, but none is persuasive. First, the Department of the Interior argues that Congress expressly precluded application of equitable recoupment in the

text of the statute by barring "pursu[it of] any other equitable or legal remedy, whether under statute or common law" regarding obligations outside the limitations period.    30 U.S.C. § 1724(b)(1).    But the Supreme Court has required "the clearest congressional language" to defeat equitable recoupment, *United States v. W. Pac. R.R.*, 352 U.S. 59, 71 (1956), and the language the Department of the Interior cites falls short.  This is because Congress's bar on equitable *remedies* does not clearly bar equitable *defenses*.  Equitable remedies typically take the form of "an injunction or specific performance," and are typically affirmatively sought and "obtained when available legal remedies . . . cannot adequately redress the injury."  *Equitable Remedy, Black's Law Dictionary* (10th ed. 2014).

Here, W&T did not institute an action to recover its overpayments. Instead, the Department of the Interior instituted the adjudications at issue and W&T merely raised equitable recoupment in its appeal of those adjudications.  The distinction between the two finds further support in *United States v. Western Pacific Railroad Co.*, 352 U.S. 59 (1956), where the Supreme Court addressed a statute of limitations governing "all actions at law."  *Id.* at 70.  The Court stated that even assuming "that the Government would have been barred by [the statute of limitations] from filing an affirmative suit . . . to recover overcharges," the statute of limitations does not bar "questions raised by way of defense in suits which are themselves timely brought."  *Id.* at 71.

Second, the Department of the Interior notes that equitable recoupment applies only to obligations arising under "the same contract or transaction" and argues that here each monthly obligation under the lease was a separate transaction. *Eddie Parker Interests*, 897 F.2d at 812; *see also Rothensies v. Elec. Storage Battery Co.*, 329 U.S. 296, 299 (1946) (noting that equitable recoupment "has never been thought to allow one transaction to be offset

No. 18-30876

against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects"). This objection is easily dispatched, as the Department of the Interior's requirement that payments be made on a monthly basis does not trump the reality that each monthly obligation arises from a single contract: the lease. The Department of the Interior's cramped view of the meaning of "the same contract or transaction" in this context is at odds with the aim of equitable recoupment doctrine, which is to allow the contract or transaction at issue to be "examined in *all its aspects*, and judgment to be rendered that does justice in view of the one transaction *as a whole*." *Rothensies*, 329 U.S. at 299 (emphasis added).[10]

Third, and finally, the Department of the Interior argues that equitable recoupment should not be applied here because there is no real-world inequity. In the Department of the Interior's view: because it applied the statute of limitations to a number of industry entities with outstanding royalty obligations regardless of "whether the imbalances benefitted the government" or not, its treatment of W&T was not inequitable. Moreover, as the Department of the Interior points out, W&T could have rectified the delivery imbalances earlier. Even if we accept the Department of the Interior's principle that a party asserting equitable recoupment must make an independent showing of inequity beyond a failure to credit its payments, the Department of the Interior's logic is unsound. The Department of the Interior's

---

[10] Although the Supreme Court has specified that individual tax payments are individual transactions for recoupment purposes, this is because each tax obligation was created by its own "single taxable event." *Rothensies*, 329 U.S. at 300; *see also Ferguson v. Comm'r*, 568 F.3d 498, 505 (5th Cir. 2009). Not so in this case, where each one of W&T's monthly obligations became due because of the obligations set out in a single lease agreement.

neutral application of the statute of limitations across the industry does not counteract the inequitable result that W&T suffered—the Department of the Interior's refusal to credit deliveries it received from W&T.  And W&T had no way to know that it needed to act quickly or else lose credit for its past overdeliveries, as the Department of the Interior had previously assured the industry that "total [royalty-in-kind] . . . natural gas volumes" would be "carr[ied] over to the next month to resolve aggregated imbalances that have occurred in prior months."  73 Fed. Reg. 19241, 19242 (Apr. 9, 2008).

Because the Department of the Interior should have credited all of W&T's deliveries under the lease, the district court properly granted summary judgment to W&T on this issue.

## VI.

Accordingly, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED.